1

1

2          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
3
- - - - - - - - - - - - - - - - - - X
4
UNITED STATES OF AMERICA          :     15-CR-0302-01
5
                    v.            :     U.S. Courthouse
6                                        Brooklyn, New York
IMRAN RABBANI,                    :
7                                        August 9, 2016
                    Defendant.    :     10:00 o'clock a.m.
8
- - - - - - - - - - - - - - - - - - X
9

10              TRANSCRIPT OF SENTENCE
           BEFORE THE HONORABLE MARGO K. BRODIE
11           UNITED STATES DISTRICT JUDGE

12
APPEARANCES:
13
For the Government:              ROBERT L. CAPERS
14                                United States Attorney
                                  By:  DOUGLAS PRAVDA
15                                     IAN RICHARDSON
                                  Assistant U.S. Attorney
16                                225 Cadman Plaza East
                                  Brooklyn, New York 11201
17
For the Defendant:               RICHARD WILLSTATTER, ESQ.
18                                MARYAM JAHEDI, ESQ.

19
Court Reporter:                  Anthony M. Mancuso
20                                225 Cadman Plaza East
                                  Brooklyn, New York 11201
21                                (718) 613-2419

22

23

24
Proceedings recorded by mechanical stenography, transcript
25 produced by CAT.

2

1

2          (Case called; both sides ready.)

3          MR. RICHARDSON:  Good morning, your Honor.  Ian

4  Richardson and Douglas Pravda for the United States.

5          THE COURT:  Good morning.

6          MR. WILLSTATTER:  Good morning.  Richard Willstatter

7  and Maryam Jahedi for the defendant, who is present.

8          THE COURT:  Good morning, Mr. Rabbani.

9          THE DEFENDANT:  Good morning.

10         THE COURT:  We're here for sentencing today, and

11  before I proceed with that, I want to acknowledge that on

12  April 8, Mr. Rabbani waived indictment by a grand jury.  He

13  consented to proceed as an adult for purposes of criminal

14  prosecution, and he pled guilty before Magistrate Judge Robert

15  M. Levy to a superseding information charging him with 18 USC

16  Section 372, conspiracy to impede federal officers.

17         I have reviewed the plea transcript with regard to

18  Mr. Rabbani's decision to waive the filing of the juvenile

19  information and consent to being transferred for criminal

20  prosecution as an adult.  I find that the decision was

21  voluntary and knowing, and I accept the defendant's consent to

22  proceed as an adult for purposes of criminal prosecution.

23         I also find that Mr. Rabbani knowingly and

24  voluntarily waived his right to proceed by grand jury and

25  instead had the U.S. Attorney file a superseding information

ANTHONY M. MANCUSO,  CSR  OFFICIAL COURT REPORTER

3

1  against him, charging him with conspiracy to impede federal

2  officers, and I have reviewed the plea minutes from

3  Mr. Rabbani's allocution.  I find that the plea was in fact

4  knowing and voluntary and that there is a basis in fact to

5  accept the plea, and I therefore accept the plea of guilty to

6  the sole count of the superseding information.

7          Before I proceed, I want to make sure that I have

8  all of the documents that were submitted by the parties.

9          I have before me the Presentence Report prepared by

10  Probation on June 28, 2016.  I have an addendum to that

11  Presentence Report that's dated July 26, 2016.  I also have

12  the Probation Department's sentencing recommendation, dated

13  August 8, 2016, copies of which I'm going to share with the

14  parties.

15          Mr. Willstatter, I'll give you a few minutes to

16  review that with your client, in a minute.  I also have before

17  me the sentencing memorandum on behalf of Mr. Rabbani dated

18  July 7, 2016, with photos of the intersection of the incident,

19  a number of awards and letters, all of which I have read.  I

20  have an August 2, 2016 letter from Mr. Willstatter, attaching

21  a letter from Mr. Rabbani, and a sentencing letter from the

22  government dated August 3, 2016.

23          Do I have all of the documents that were submitted

24  to the Court for sentencing?

25          MR. WILLSTATTER:  Yes, your Honor.

4

1        MR. RICHARDSON:  Yes, your Honor.

2        THE COURT:  Okay.  Thank you.

3        Mr. Willstatter, I'll give you a few minutes to

4    review the Probation Department's recommendation with your

5    client.

6        MR. WILLSTATTER:  Thank you, your Honor.

7        (Counsel confers with the defendant.)

8        MR. WILLSTATTER:  Thank you.  I have had an

9    opportunity to review the recommendation of the United States

10   Department of Probation.

11       THE COURT:  Okay.

12       Mr. Willstatter, have you and your client read and

13   reviewed and discussed the Presentence Report and the addendum

14   to the report?

15       MR. WILLSTATTER:  We have, your Honor.

16       THE COURT:  You can remain seated, Mr. Willstatter.

17   You do not need to stand.

18       MR. WILLSTATTER:  Yes.

19       THE COURT:  Okay.

20       According to the PSR, the total offense level is 19,

21   criminal history point is zero, criminal history category is

22   one, with corresponding Guideline range of 30 to 37 months.

23       Are there any objections to the PSR's calculation?

24       MR. WILLSTATTER:  No, your Honor.

25       THE COURT:  Are there any objections to any of the

5

1    factual allegations in the PSR?

2           MR. WILLSTATTER:  I think the Court is seeing that

3    the only significant difference we have with the Department of

4    Probation is that they have characterized the offense conduct

5    as an assault, and in accordance with the guilty plea, the

6    information and the facts we have, we characterize it as a

7    conspiracy to interfere with and to dissuade law enforcement

8    officials from following Mr. Rabbani, which is a federal

9    crime, but there's no proof that anyone or certainly my client

10   agreed to attack or injure a federal law enforcement official

11   on the morning of June 13, 2015.

12          THE COURT:  And your statements are consistent with

13   your objections to the report?

14          MR. WILLSTATTER:  Yes.

15          THE COURT:  Which were then addressed in the

16   addendum; correct?

17          MR. WILLSTATTER:  They were.

18          THE COURT:  Okay.  Seeing that there is no further

19   objection to the PSR, I adopt the PSR as amended by the

20   addendum, and I specifically adopt the calculations that I

21   find consistent with the PSR.  I find that Mr. Rabbani's

22   Advisory Guideline Range is a total offense level of 19, zero

23   criminal history points, a criminal history category of one,

24   producing a Guideline range of 30 to 37 months' imprisonment,

25   a supervised release term of one to three years, a fine range

1   of 6,000 to 60,000, and a $100 dollar special assessment.

2          Turning to the 3553(a) factors, I have considered

3   the relevant factors set out by Congress in 18 USC Section

4   3553(a), including the Advisory Guideline, to insure that I

5   impose a sentence that is sufficient but not greater than

6   necessary to comply with the purpose of sentencing.

7          In addition to the policy statements, Mr. Rabbani, I

8   must and I have also considered the nature and circumstances

9   of the offense, the history, your history and characteristics,

10  the need to avoid unwarranted sentence disparities among

11  similarly situated defendants and the types of sentences that

12  are available to me.

13         Mr. Willstatter, do you wish to argue the

14  application of the factors, request a variance, or otherwise

15  make a sentencing recommendation?  As you see from the

16  submission of the government, the government is arguing for a

17  Guideline sentence at the high end of the Guideline, and as

18  you saw from the Probation Department's recommendation, the

19  Probation Department is recommending a sentence of 24 months.

20         I've read all of the submissions, but I'm happy to

21  hear any additional arguments that you would like to make.

22         MR. WILLSTATTER:  Thank you, your Honor.

23         With the Court's permission, I will remain seated

24  while I do this.

25         THE COURT:  Please do.

7

1        MR. WILLSTATTER:  Your Honor, present in court is
2    the defendant's parents, the defendant's brother, Ikram
3    Rabbani, Martin Levy, the high school social studies teacher
4    who wrote a very nice letter on behalf of Mr. Rabbani that the
5    Court may have seen.
6        THE COURT:  I've read all the letters,
7    Mr. Willstatter.
8        MR. WILLSTATTER:  And numerous members of his
9    community and the Muslim Center of New York in particular have
10   appeared here to support my client.
11       Your Honor, my client, Mr. Imran Rabbani, is a young
12   man who was seventeen years of age when he was arrested.  He
13   was not yet graduated from high school, and he was very smart
14   but very immature in many of the choices that he made in his
15   life, in particular in befriending a young man by the name of
16   Munther Omar Saleh.
17       It was his relationship with Munther Omar Saleh
18   which brought him to the court here.  In contrast to what the
19   Probation Department said, it was not his relationship with
20   members of his masjid or mosque that caused problems for him.
21   It was his relationship with one particular person, who was
22   the son of a storekeeper or manager at the Metropolitan Foods
23   around the corner from where he lived in Queens County, and he
24   befriended this person, and he did bring him to the mosque on
25   numerous occasions, and they had lots of discussions and

8

1    arguments.  And he acknowledges to the Court in his own letter

2    that he should not have befriended this person and should not

3    have considered some of the things that Mr. Saleh was saying

4    to him, but he is not an adherent to a foreign terrorist

5    organization.  He is not a terrorist.  He's not a member of

6    ISIL.  He loves the United States of America.  His parents

7    love the United States of America.  His brothers and sisters

8    love the United States of America.  He is a Queens High School

9    graduate who is looking forward to the rest of his life in

10   New York City

11        He was imprisoned in solitary confinement for about

12   six months, and he experienced a great deal of anxiety and

13   disorientation after being plucked from his community and

14   placed in a jail cell.  And to deal with that, he fortunately

15   had the services of the Social Services staff at the Essex

16   County Juvenile Detention Facility.  And I have to tell you

17   that when I first heard he was being sent to Essex County

18   Juvenile Detention Facility, I was very upset, because I knew

19   about what the Essex County Adult Facility is like.  And it is

20   an awful, awful place.  But the Juvenile Facility is a

21   facility that I have come to learn with caring staff who

22   really try to help the youngsters there.  And my client

23   actually benefited from working with those people in Essex

24   County, who deserve a lot of credit.

25        Notwithstanding knowing what kind of charges were

1    pending against Imran Rabbani, they disregarded that, and they

2    took him under their wing. And what did he do? He took three

3    college classes, every one that was offered, and he got

4    straight A's there.

5             And then they offered him a chance to participate in

6    the mock trial program that they run along with Rutgers Law

7    School in New Jersey, and he was selected to be the head of

8    the defense team at a mock trial at which all the other young

9    men who were at that facility watch in the audience. The law

10   students prepare the defense team and the prosecution team for

11   a case, and a judge from New Jersey sits and makes rulings.

12   And he did very well.

13            But I was surprised, and I think the Court will see

14   in the letter from Professor Laura Cohen, that he did an

15   absolutely amazing job as the defense lawyer in that case.

16   Her words to me were that, He should be an attorney. But he's

17   too young to pick a job title for what he's going to do with

18   the rest of his career, but I think it's clear that he is a

19   talented and a young man who has a lot of potential.

20            And we see that in the letter from his high school

21   social studies teacher, Martin Levy, who took time out of his

22   day to come here today to support Imran Rabbani, he describes

23   Imran Rabbani as a respectful young man with a warm heart, not

24   a danger or scary person in any way, shape or form.

25            This young lady, Prema Saha, who is the one that he

10

1    was communicating with that the government was surveilling him

2    when they were talking about helping homeless people, she

3    writes that he is, you know, the kind of warm, loving

4    personality that he had, and they had a platonic relationship,

5    was something that she would only imagine in a Disney movie.

6    I didn't write this letter.  Prema Saha wrote the letter.

7            So, we have not just letters from his family, which

8    are poignant in their own way.  We have a young man who has

9    two elder brothers, each of whom has been and continues to be

10   extremely successful in the secular world.  Imran Rabbani will

11   start St. John's Law School tomorrow, and he expects to join,

12   or he hopes -- it's his dream -- to join the United States

13   Army Judge Advocate General Corps as a lawyer/soldier for the

14   United States.  And Ikram Rabbani will be a senior later this

15   month.  I think it's a college in Carlisle, Pennsylvania, and

16   he was the valedictorian of John Baum High School in Queens

17   County.

18           But significant for this Court is not just that my

19   client's parents are committed to supporting their son, but my

20   client's capable older brothers are assuring the Court that

21   they will do everything they can to mentor him to continue on

22   the right path for his life.

23           So, he's served fourteen months' imprisonment now,

24   which is the equivalent of about 16 months, maybe a little bit

25   more, if he was sentenced to that term in a federal

1    correctional facility.  But I know that it is not going to be

2    helpful to his future for him to be further imprisoned.  And

3    he has been -- he did serve six months in a SHU or solitary

4    confinement.  He has been punished.  And he acknowledges that

5    the Court has the authority to sentence him up to 72 months'

6    imprisonment, but we really feel, under these circumstances,

7    that a sentence with the equivalent of 16 months in federal

8    prison is sufficient, and that a sentence of longer would be

9    greater than necessary to address his particular needs and the

10   goals of the Sentencing Reform Act, including deterrence.

11           No one is going to sign up, s, I want to go serve 14

12   months in jail, I want to lose my family, and I want to get a

13   felony conviction.

14           As I pointed out in reference to Judge Block's

15   recent decision, he will face many obstacles that other young

16   men will not face.  I'm confident that he'll be able to

17   overcome those obstacles, but those collateral consequences

18   are also part of the punishment that is being imposed upon

19   him.

20           I want to address, for a moment, the recommendation

21   that the government has made in their sentencing memorandum.

22   In addition to recommending the harsher possible sentence

23   under the Guidelines, the government has recommended some

24   special conditions of supervised release.

25           First, let me just say that, with respect to the

1  request for mental health professionals and mentors who are

2  approved -- selected with the assistance and approval of the

3  U.S. Attorney's Office, that first of all, the only indication

4  that my client has any kind of difficulty has to do with an

5  adjustment disorder which was diagnosed by Dr. June.  And I

6  point out that an adjustment disorder is a short-term

7  condition that occurs when a person has grave difficulty

8  coping with or adjusting to a particular source of stress --

9             THE COURT:  Mr. Willstatter, I can short-circuit

10  your argument with regard to the recommendations by the

11  government.  I do not plan on imposing that recommendation.

12  As you've seen, the recommendations of the Probation

13  Department, I do plan to impose the recommendations of the

14  Probation Department.

15             The only additional condition I plan to impose from

16  the government's recommendation, which I think is subsumed in

17  the recommendation of the Probation Department, in any event,

18  is that your client have no contact with his coconspirators.

19  Other than that, the recommendations by the government, most

20  of them, have been addressed by the Probation Department.  As

21  to the mental health professional, I don't find it necessary

22  here.

23             MR. WILLSTATTER:  Okay.

24             With respect to the first condition, it describes

25  something called the Internet Monitoring Program.

1          THE COURT:  I've just addressed your concern,

2    Mr. Willstatter.  Are you referring to the Probation

3    Department's recommendation?  Yes.  What about it?

4          MR. WILLSTATTER:  Well, I'm not sure what their

5    Internet Monitoring Program is.

6          THE COURT:  It's a standard program that's used with

7    child pornographers, that monitors the use of the Internet by

8    the defendant, and it is one that I do plan on imposing.  If

9    you want to be heard in objection to that, I'm happy to hear

10   from you.

11         MR. WILLSTATTER:  Well, I don't have an objection to

12   the standard search condition of submitting his person,

13   property and house, residence, vehicle, papers and computers

14   to search.  But I do have an objection to the Internet

15   Monitoring Program, because under 18 USC 3563, only such

16   deprivations of liberty or property as are reasonably

17   necessary for the purposes of Section 3553(a)(2) can be

18   approved, and I don't think that there is a sufficient

19   individualized assessment that he needs this particular

20   condition.  You know, it's one thing to have his everything be

21   subject to search.  It's another thing to have a real-time

22   monitoring of every --

23         THE COURT:  It is not real-time monitoring,

24   Mr. Willstatter.  Why don't I read the recommendation.  The

25   government is asking for real time.  That is not what the

1  Probation Department is recommending.

2          MR. WILLSTATTER:  Yes.  It just says "monitor."  The

3  difference between monitored and real-time monitoring escapes

4  me.

5          THE COURT:  There's a huge difference,

6  Mr. Willstatter, I assure you

7          Do you have any other objection --

8          MR. WILLSTATTER:  Okay.

9          THE COURT:  -- or any other argument in support of

10 your objection that you would like me to consider?

11         MR. WILLSTATTER:  Yes.  Not in support of my

12 objection.

13         THE COURT:  Okay.

14         MR. WILLSTATTER:  But I did want to point out that

15 although at one time Mr. Rabbani espoused some troubling

16 beliefs, a defendant's abstract beliefs, however obnoxious to

17 most people, may not be taken into consideration by a

18 sentencing judge.  And that's just not me talking.  That's the

19 United States Supreme Court in a case called Wisconsin vs.

20 Mitchell, reported at 3508 United States at 476, a 1993 case.

21         As quoted in United States vs. McLaurin, from the

22 Second Circuit in 2013, that was the case rejecting the

23 condition of supervised release called plysmograph.

24         THE COURT:  What's your argument, Mr. Willstatter?

25         MR. WILLSTATTER:  Well, just that the government

1    seems to be focused entirely or for the most part on some

2    comments that Mr. Rabbani made in May and June to Mr. Saleh.

3          But what the offense conduct is is, in trying to

4    stop the police officers from following him, that he did, both

5    on

6    June 5, when they confronted the police officers near the

7    Allah Man Mosque and called 911 to ask for help in trying to

8    stop these people who were following them, and then again on

9    June 13, this is the offense conduct for which Mr. Rabbani is

10   being sentenced.  And it is a serious crime, and he accepts

11   responsibility for that crime

12         And more importantly, whatever thoughts that he had

13   in May or June of 2015 is not where he's headed with the rest

14   of his life.  And we have -- it's not just what he's saying,

15   but everybody who has come in contact with him, from the

16   psychologist at Essex County to the professor at Rutgers Law

17   School to the teacher at the high school and to his other

18   friends and family members, he does not present a danger to

19   this community.  So, I ask you to sentence him to a period of

20   time served.  And that completes my application.

21         THE COURT:  Thank you, Mr. Willstatter.

22         Mr. Rabbani, you have the right to make a statement.

23   You do not have to.  I have your written statement, but if

24   there's anything else that you would like this Court to

25   consider before sentencing you, please do.

16

1          THE DEFENDANT:   Thank you.

2          Your Honor, it's been a long haul, and it's been

3    quite a journey.  I spent about fourteen months in jail, and

4    about five or six of those months in solitary.  If I learned

5    anything, I learned that time is really precious, and time

6    wasted is time that I'm never getting back.

7          During that period, I was buried in books and my own

8    deep thoughts.  I came across a saying by Socrates, the famous

9    philosopher, that the unexamined life is not worth living.

10         I made many mistakes, and I probably made more

11   mistakes than the average person, but to dwell on those

12   mistakes and remain idle is just pointless to me.  I made a

13   mistake of getting out of that car and running at the law

14   enforcement officer.  I made a mistake, and I want to

15   sincerely apologize, if he's in this room.  I don't know him,

16   but if he's in this room, I'm sorry.  I hope that the time

17   I've spent has compensated for what I have done.  I'm ready to

18   leave.  Your Honor, I'm ready to make something of myself.

19   I'm ready to stand up on my own feet.  Sorry.

20         THE COURT:   Take your time.

21         THE DEFENDANT:   I have disappointed many people in

22   my life, including my family and, most importantly, myself.

23   But that doesn't mean that I can't make amends for what I have

24   done.  Whatever sentence you deem appropriate and you impose

25   on me, I'm going to have to do that, one way or the other, and

17

1  I'm going to use that time wisely to the best of my ability.

2        I want you to know that if you grant me time served,

3  it's going to give me a head start to do something productive

4  with my life.  I want to do something.  Something good.

5  Something good that affects the entire community and my own

6  family as well as myself.  Everything that's happened so far

7  has made me realize that, you know, I can change, and I have

8  changed, and I will continue to do so, one day at a time.  You

9  know, everybody who I came across when I didn't have this

10 mindset, they always saw the best in me, and I think it's time

11 that I see that best in me.  It's really it.  Thank you for

12 letting me speak.

13        THE COURT:  Thank you, Mr. Rabbani.

14        The government.

15        MR. RICHARDSON:  Thank you, your Honor.

16        We'll be brief.  I know that the Court is well aware

17 of the circumstances of the defendant's arrest, both from the

18 transfer hearing this court presided over, and the Presentence

19 Report and the government's submissions.

20        I think it's worth underlining the significance of

21 this crime derives in large part from the dangerous path that

22 the defendant was on in the weeks leading up to that crime,

23 and that is that he befriended a man that he knew held

24 extremist -- violent extremist views.  And more than just

25 befriending him, he ignored the advice of people he trusted in

1    the community around him to not associate with him.   He

2    exchanged messages with him, in which he expressed support for

3    the same violent ideology, and he, after being followed by law

4    enforcement, discussed the fact that he was being followed by

5    law enforcement with that man, and took steps to conceal his

6    communications by using an encrypted messaging application.

7              Now, despite all of these red flags, that is the man

8    the defendant chose to jump out of the vehicle with, armed

9    with a knife, and charged a vehicle that he believed was the

10   law enforcement vehicle.   That makes this crime more serious

11   than the generic conspiracy to impede law enforcement

12   officers, for which the Guidelines would recommend 30 to 37

13   months' imprisonment in any generic case.

14             The government hopes that the defendant is genuine

15   about his desire to change his life and to choose now a

16   different path, but the Court's sentence should take into

17   account the nature and circumstances of the defendant's

18   offense in order to provide just punishment for that offense

19   and in order to specifically deter both this defendant and

20   provide general deterrence for the crime that he committed.

21             I think Mr. Pravda would like to address the

22   supervised release conditions that the government has

23   recommended in this case, understanding, of course, that your

24   Honor has made your views known on those.

25             THE COURT:   Okay.

1    MR. PRAVDA:  Thank you, your Honor.

2    If I could first respond to Mr. Willstatter's

3  objections with respect to the Probation Department's

4  recommendation for a search condition and the computer

5  monitoring.  Let me first say that I think the Probation

6  Department's revised recommendation for supervised release

7  special conditions incorporates virtually all of what the

8  government recommended, together with your Honor's

9  qualification that you would restrict him from specifically

10 associating and contacting his coconspirators, Saleh and

11 Fareed Mumuni.

12    THE COURT:  Specific things that it does not

13 incorporate is the request of the government that the

14 government be notified if in fact these conditions are somehow

15 not complied with.

16    MR. PRAVDA:  If the conditions are violated, your

17 Honor, it would be standard for Probation to notify the

18 government of those violations.

19    THE COURT:  Correct.  If there is a violation.  But

20 as written in the proposal by the government, it doesn't refer

21 to that.  It simply says that it seeks monitoring, and it

22 seeks that it be notified of the results, and that, I believe,

23 is inappropriate, which is why I'm rejecting the government's

24 request.

25    I do believe, as I stated earlier, that all of the

1   conditions, or at least with regard to the concerns expressed

2   by the government, the conditions as recommended by the

3   Probation Department does address those concerns, and I

4   believe that recommendation is sufficient here.

5              MR. PRAVDA:  Your Honor, I agree with that.  I don't

6   believe that our request to be notified was intended, for

7   example, the government to see in real-time the defendant's

8   communications, but simply to be notified specifically if

9   there were any communications that were in violation of the

10  conditions that the Court were to impose.  So, we agree with

11  that.

12             It's not required, as Mr. Willstatter has suggested,

13  that the conditions specifically be the result of the offense

14  conduct.  It would simply be emerged from the specific offense

15  conduct.  It is sufficient for the Court to impose conditions

16  of supervised release so long as they are related to any of

17  Section 3553(a) factors.

18             And here, we have a situation where the defendant

19  spent several months searching on line for YouTube videos

20  related to ISIL.  News articles about ISIL.  Websites about

21  ISIL.  And engaging in electronic communications with Saleh

22  about ISIL and about jihadist ideology.  This specific

23  electronic monitoring search condition is designed to address

24  that particular conduct, which is acceptable, although it is

25  not related to the act of him jumping out of the car and

1   charging at the law enforcement officer.

2          I do want to address, also, your Honor's statement

3   about the recommendation by the government for periodic

4   meetings with mental health professionals and mentors.  And I

5   recognize that the courts have said that you are not inclined

6   to impose that condition.  And I just want to clarify, so that

7   the Court understands where we're coming from when we are

8   asking for that condition, which is that what we're trying to

9   accomplish is to help Probation be able to help the defendant.

10         We're not suggesting that the defendant has some

11  kind of mental health condition that requires treatment, but

12  simply that, as Mr. Willstatter argued in his sentencing

13  submission, the defendant would be benefited greatly by the

14  presence of a psychologist that he met with regularly at the

15  Essex County Juvenile Detention Center.  And that psychologist

16  submitted a report to the Court about how the defendant was

17  doing, and it certainly appeared, both from that report and

18  from the defendant's own sentencing submission, that his

19  ability to meet with that psychologist and to discuss, you

20  know, the path that he wanted to take was beneficial to him.

21         So, it was our idea that if the defendant could

22  continue to have periodic meetings with specialists, you know,

23  whether they have mental health training or are simply mentors

24  who have experience with counter violent extremism, that would

25  be something that could help him during the period of his

22

1   supervised release.

2          And our office has actually worked with the

3   Probation Department and defense attorneys in other cases to

4   understand how to responsibly conduct threat assessments in

5   cases like this one, and to be able to have defendants meet

6   with these professionals and these mentors to make sure that

7   they continue on the right path.

8          So as, Mr. Richardson said, we certainly hope that

9   the defendant's words to the Court today are genuine about his

10  wanting to change the direction that he was going in that led

11  to the crimes that he was charged with.  But there would be

12  benefit, we believe, in having a formal mental health

13  professional and mentor system in place, where he would have

14  the ability to meet with those individuals who would work

15  closely with the Probation Department to make sure that he

16  does continue on that right path.

17          THE COURT:  Thank you, Mr. Pravda.

18          MR. PRAVDA:  Thank you, your Honor.

19          THE COURT:  Would you like to be heard further,

20  Mr. Willstatter, with regard to that one recommendation?

21          MR. WILLSTATTER:  Well, if the Court does not intend

22  to impose it, I don't need to say anything else.  But if the

23  Court is considering imposing such a condition, then I would

24  like to be heard.

25          THE COURT:  Please.

23

1          MR. WILLSTATTER:  Your Honor, as I was pointing

2     out --

3          THE COURT:  Let me narrow the issue.  The issue is

4     whether or not he should be under the continued care of a

5     psychologist or someone else recommended by the Probation

6     Department to insure that Mr. Rabbani stays on the right

7     track.

8          MR. WILLSTATTER:  Right.

9          So, there is no basis for a conclusion that he

10    requires mental health counseling, and so --

11         THE COURT:  Mr. Willstatter, you yourself have

12    argued to the Court that he benefited from that kind of care

13    while he's been in the Essex facility.

14         MR. WILLSTATTER:  True.

15         THE COURT:  Why wouldn't he continue to benefit from

16    that?

17         MR. WILLSTATTER:  Well, principally because the

18    problem that he had in the facility was adjusting to being

19    detained and the anxiety of not knowing what his future is.

20    That specific adjustment disorder is something that is

21    completely normal.

22         If we were to pluck any seventeen-year-old from

23    Queens County and put him in jail and tell him that he's

24    charged with a crime for which he could receive many years in

25    prison, if the person didn't have an adjustment disorder, I

24

1   might think that person is a sociopath.  It's completely
2   normal to have had a lot of anxiety dealing with being taken
3   away from your family.  And once this matter is concluded and
4   Mr. Rabbani is ultimately released, I see no reasonable basis,
5   and there has to be, a -- only such deprivations of liberty as
6   are reasonably necessary for the purpose of his 3553(a)(2).
7           Secondly, the government has suggested in their
8   papers that these mental health professionals should be
9   selected with the assistance and approval of the U.S.
10  Attorney's Office.  And let me just say --
11          THE COURT:  I'm not asking you to address that,
12  Mr. Willstatter, only the issue of whether or not one should
13  be imposed
14          MR. WILLSTATTER:  All right.  I'm not going to
15  address my argument with respect to that, because I think
16  that's improper.
17          I just see no basis for the appointment of
18  a "mentor."  He will have a probation officer, whose function
19  is in part to offer guidance to the defendant, and we have
20  some very capable probation officers we are fortunate to have
21  in this district, who I'm sure would be interested in helping
22  Mr. Rabbani stay on the right path.
23          So, I see no basis in law for the appointment of
24  a "mentor," and if the Court, you know, finds a mental health
25  professional is somehow required and is going to order it,

25

1   then it certainly seems to me that there should be some degree

2   of confidentiality.  Otherwise, it's just like submitting

3   yourself to a constant examination of your thoughts by the

4   government, and I think that that is a deprivation of liberty

5   that is uncalled for under the circumstances.

6           THE COURT:  Okay.  Thank you.

7           After assessing the particular facts of this case,

8   and in light of the relevant 3553(a) factors, including the

9   Sentencing Guideline, I do conclude that a sentence below the

10  Advisory Guideline Range is warranted, and I sentence

11  Mr. Rabbani, Imran Rabbani, to 20 months in custody and three

12  years of supervised release, with special conditions to that I

13  will discuss in a minute

14          Mr. Rabbani, I find that this sentence is sufficient

15  but not greater than necessary to comply with the purpose of

16  sentence.  It reflects the seriousness of the crime that you

17  pled guilty to, conspiracy to impede federal officers.

18          As to the nature and circumstances of the offense, I

19  took into account your youthful age, the fact that your

20  conduct appears to have been influenced by Mr. Saleh, the fact

21  that, as you yourself acknowledged, this could have ended many

22  different ways.  We're all thankful that it ended the way it

23  did and that no one was hurt.

24          The government argues that I should consider the

25  fact that it exercised its discretion and allowed Mr. Rabbani

1    to plead to the lesser charge of conspiracy to impede a

2    federal officer, rather than to the more serious charge of

3    conspiracy to provide material support to a foreign terrorist

4    organization.

5          In deciding what sentence to give Mr. Rabbani, and

6    as the government argued for a sentence at the top end of the

7    Guideline, the problem I have with this argument is the fact

8    that it's not clear to me that the government could have

9    proven the more serious charge here against Mr. Rabbani, at

10   least not based on the evidence that I have seen, either at

11   the hearing or in the submissions to me.

12         The evidence, as I understand it, is that in the

13   days leading up to the incident, Mr. Rabbani spent

14   considerable time with Mr. Saleh, an individual he knew to be

15   a supporter of ISIS, that the defendant made statements to

16   Saleh that he, the defendant, supported the ISIS ideology and

17   methods, and that Mr. Rabbani displayed hostility towards law

18   enforcement.  That's the evidence.

19         While Mr. Rabbani's conduct demonstrates that he was

20   in fact being led down the wrong path by Saleh, nothing in his

21   conduct demonstrates that he conspired to provide material

22   support to ISIL.  Thus, I reject the government's argument,

23   and I do assign considerable weight to the defendant's

24   argument.

25         In considering your history and characteristics,

1   Mr. Rabbani, in addition to your age, I took into account the

2   fact that you have no criminal history, that the only time you

3   have been in trouble with the law is when you stole your

4   neighbor's vehicle and went for a joyride, that you are and

5   you have been a good student, that despite your difficult

6   family circumstances, you and your siblings rose above it.

7   There are five children, and your parents and you have been

8   living in a one-bedroom apartment.  That could not have been

9   easy.  But as Mr. Willstatter pointed out, both of your older

10  brothers have gone on to do great things with their lives

11          I also took into account the fact that you worked

12  while you were in high school, so as not to burden your family

13  and in part to help your family.  I read all the letters that

14  were submitted by your family members, your friends and other

15  people in your building who have known you.

16          In particular, the letter from your high school

17  friend, Prema Saha, gave me a very vivid picture of the type

18  of person you were in high school.  She explained in detail

19  how you assisted her and others and convinced them to go to

20  school, to simply go to classes and not skip, like they did on

21  a regular basis, and to take their education more seriously.

22  She discussed how you encouraged her and others to take their

23  education seriously, go to class, and she talked about the

24  kindness that you demonstrated to her, to other students and

25  to complete strangers.  She illustrated that point by telling

1  the story of the time that you helped this old lady cross the

2  street, even when she didn't want your help, that you saw that

3  there was a car coming at a very fast speed, and you jumped up

4  and down to make sure the car would stop and that little old

5  lady could cross the street.  The letter from Sarmad Karatela,

6  who also explained that you went out of your way to assist

7  him, as a new immigrant when he joined the high school, to

8  help him with his work and to assist him in assimilating.  And

9  the many other letters that were submitted on your behalf.

10 Those letters, more than anything else before me, to me

11 demonstrates who you are and the fact that there is much more

12 good than evil in you.

13         I have also considered your rehabilitation since you

14 have been incarcerated.  I considered the fact that you have

15 been taking college classes, the quality of the work that you

16 have done, the fact that you have received the awards of

17 excellence, your participation in the mock bar trial, where

18 the professor at the law school commented on just how

19 impressed she was, not just with your ability to deal with the

20 subject matter, but the manner in which you handled yourself.

21         I also took into account that you have a plan for

22 your future, that you plan to continue attending college, to

23 graduate from college, and to make something of yourself.  And

24 I recognize that you have a supportive family.

25         Your parents have been at every single appearance

1   that you have made in this courthouse, and I know that is not

2   easy for them, in view of the fact that if your father isn't

3   working, he's not getting paid and that he is the only

4   breadwinner.  Your family, your community, they are all here

5   to support you.  Based on all that I have seen of you and all

6   that I have read about you, I do have hope that you will turn

7   your life around, and that you have learned and that you will

8   continue to learn from your mistakes, and, as you said in your

9   letter to me, that you will continue to be cautious of whom

10  you call a friend.

11          So, in balancing all of these factors that I'm

12  required to consider, and in giving a great deal of

13  consideration to the many letters from your family and

14  friends, and your letter telling me what you plan to do, I

15  conclude that a sentence below the Guideline is an appropriate

16  sentence, and that is why I am sentencing you to 20 months in

17  custody.

18          I recognize that it is more than what you had hoped

19  for and what your attorney has argued for, but it's not

20  substantially more.

21          I am also sentencing you to three years of

22  supervised release with the following condition:  You shall

23  not have any contact with your coconspirators, Munther Omar

24  Saleh and Fareed Mumuni.  You shall not knowingly associate or

25  communicate in person, by mail, telephone or via electronic

communication or any other means with anyone who is engaged in providing or attempting or conspiring to provide material support to a designated foreign terrorist organization as defined in the statute, 8 USC Section 1189, unless you're granted permission to do so by your probation officer.

You shall cooperate with the Probation Department's computer and Internet Monitoring Program. Contrary to Mr. Willstatter's argument, I believe this is necessary. You were communicating with Saleh via electronic means. The goal here is to insure that while you're under supervision, you do not go down that path again with Saleh or anyone else. That's the purpose for this provision. It's not to punish you further, but to help you and to make sure that when you do go back home. In addition to your family and your friends, the Probation Department will insure that you stay on the right track

Cooperation with the Probation Department's computer and Internet Monitoring Program shall include, but is not limited to, identifying computer systems, Internet capable devices and/or similar electronic devices that you have access to, and allowing the installation of monitoring software or hardware on these devices at your expense. You shall inform all parties that access a monitored computer or similar electronic device that the devise is subject to search and monitoring.

31

1          You may be limited to possessing only one personal

2     Internet capable device to facilitate the Probation

3     Department's ability to effectively monitor your

4     Internet-related activities.  You shall permit random

5     examinations of any such computer systems, Internet capable

6     devices, similar electronic devices and related computer media

7     such as CD's that are under your control.

8          The standard search conditions require you to submit

9     your person, property, house, residence, vehicle, papers,

10    computers as defined in the statute 18 USC Section 1030(e)(1),

11    other electronic communications or data-storage devices or

12    media or office to a search conducted by the United States

13    Probation Officer.  Failure to submit to a search may be

14    grounds for revocation of your supervised release.

15         Mr. Rabbani, you shall warn any other occupants that

16    the premises may be subject to searches pursuant to this

17    condition.  A probation officer may conduct a search pursuant

18    to this condition only when a reasonable suspicion exists that

19    you have violated a condition of your supervision and that the

20    areas to be searched contain evidence of this violation.  Any

21    search must be conducted at a reasonable time and in a

22    reasonable manner.

23         I'm also imposing the condition that you either work

24    or attend school on a full-time basis or hold a full-time

25    combination of both.  You shall not possess a firearm,

1   ammunition or destructive device.

2           As to the mental health supervision, I am imposing

3   that.  Probation Department will make a determination when and

4   if it is necessary, and if they determine that it is, they are

5   empowered to find you and to require you to attend mental

6   health treatment, participate in mental health treatment.

7           Do you understand that, Mr. Rabbani?

8           THE DEFENDANT:  Yes.

9           THE COURT:  I am not imposing a fine.  I find that

10  you are unable to pay a fine.  I am imposing a $100 dollar

11  special assessment.

12          You can appeal your conviction if you believe that

13  your guilty plea was somehow unlawful or involuntary, or if

14  there is some other fundamental defect in the proceeding that

15  was not waived by your guilty plea.  Under some circumstances,

16  a defendant also has the right to appeal his or her sentence.

17  However, a defendant may waive that right as part of a plea

18  agreement, and you have entered into a plea agreement which

19  waives your right to appeal your sentence.  Such waivers are

20  generally enforceable, but if you believe the waiver itself is

21  not valid, you can present that theory to the appellate court.

22          Any notice of appeal must be filed within fourteen

23  days of the filing of the entry of the judgment, or within

24  fourteen days of the filing of a notice of appeal by the

25  government.  If requested, the Clerk of the Court can file a

1  notice of appeal on your behalf.  If you cannot afford to pay

2  the cost of an appeal or for appellate counsel, you have the

3  right to apply for the court to waive the filing fee, and on

4  appeal, you may also apply for court-appointed counsel.

5          I am dismissing the underlying juvenile information.

6          Is there anything else?

7          MR. RICHARDSON:  No, your Honor.

8          MR. WILLSTATTER:  Your Honor, can I be heard

9  briefly?

10         THE COURT:  I'm not done yet, Mr. Willstatter, and

11 I'll give you that opportunity.

12         MR. WILLSTATTER:  Certainly.

13         THE COURT:  Mr. Rabbani, I do believe that you were

14 being led down the wrong path.  I don't know what would have

15 happened if you weren't stopped that night.  It's possible

16 that you would have gone down that path and you would be in a

17 very different situation before the Court.  It's also possible

18 that you could have recognized that that was not the path for

19 you.

20         You had and you have a supportive family and

21 community, and I want to believe that maybe you would have

22 come to your senses even without the government's

23 intervention.  I don't know.  It's all irrelevant now.  But

24 what does matter now is that you're not brought back to this

25 court for any reason.  You're being given an opportunity to

1   continue with your life, to do what your brothers have done,

2   to do what your parents would love for you to do, which is to

3   succeed and to be a productive member of society. I hope you

4   take full advantage of that, and that you do use those talents

5   that everyone says that you possess. The fact that you could

6   convince so many of your classmates to go to school and not

7   skip classes, some of whom are now in college and they thank

8   you for that, for keeping them on the right track, tells me

9   that you are a very smart individual and someone with great

10   capabilities. So, I hope never to see you again, but I do

11   hope to read about the wonderful things that you will go on to

12   do. That's my hope to you, Mr. Rabbani.

13          Do you understand that?

14          THE DEFENDANT: Thank you.

15          THE COURT: Okay. Mr. Willstatter.

16          MR. WILLSTATTER: We greatly appreciate the Court's

17   careful attention to this matter. And the objections that I

18   am going to make to this particular special term -- special

19   conditions of supervised release --

20          THE COURT: Which one?

21          MR. WILLSTATTER: Special conditions of supervised

22   release. I'm concerned about --

23          THE COURT: Which one are you objecting to,

24   Mr. Willstatter?

25          MR. WILLSTATTER: The Internet monitoring, only

1  because I'm concerned that Mr. Rabbani wants to go to college,

2  and in 2016, it's pretty much impossible to go to college

3  without being able to access the Internet, and typically

4  people --

5          THE COURT:  And he's not being prohibited from doing

6  that, Mr. Willstatter.

7          MR. WILLSTATTER:  Well, it's going to be difficult

8  if he only has just this one device, because typically, you'll

9  go into the library and there's computers there.  You know, it

10  might be difficult for him to attend college with this

11  condition.  I mean, certainly he'll do the best he can.

12          THE COURT:  Mr. Willstatter, it will be challenging,

13  because it is a condition.  However, it's nothing that

14  Mr. Rabbani cannot deal with, work with Probation to address

15  and move forward.  It is not a hardship to have this

16  monitoring system on any device that he's using.  I have made

17  the finding that under the circumstances here, based on

18  Mr. Rabbani's conduct, it is a necessary condition.  Probation

19  will work with him, because they, like you, want him to go to

20  college and they want him to succeed.  So, it won't be a

21  hardship, and if it is, you'll make an application to me

22          MR. WILLSTATTER:  Okay.  That's what I will do.

23          Other than that, I have nothing to comment, your

24  Honor.

25          THE COURT:  Okay.

36

1          Is there anything else from either side?

2          MR. RICHARDSON:  No, your Honor.

3          THE COURT:  Mr. Willstatter.

4          MR. WILLSTATTER:  Your Honor, if the defendant is to

5    be placed by the United States Bureau of Prisons, I ask that

6    he be placed somewhere close to New York City in some suitable

7    facility such as a satellite camp.  I understand that he will

8    not have a great deal of time that he'll be continuing to

9    serve, but he might be placed, so I ask the Court to make that

10   recommendation.

11         THE COURT:  I will make the recommendation to the

12   Bureau of Prisons that Mr. Rabbani be placed in a facility

13   close to New York so that his family can visit him.

14         Is there anything else, Mr. Willstatter?

15         MR. WILLSTATTER:  No, your Honor.

16         THE COURT:  Okay.  I wish you good luck, Mr.

17   Rabbani.

18         THE DEFENDANT:  Thank you.

19                    ooooooOoooooo

20

21

22

23

24

25